IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Crim. No. 04-03106-01-CR-S-RK[1] |
| | ) | |
| BEN J. MULLINS, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM AND OBJECTIONS TO THE
AMENDED RESENTENCING ADDENDUM TO THE PRESENTENCE REPORT**

Comes now the defendant, Ben J. Mullins, by and through his counsel of record, and respectfully moves this Court to resentence Mr. Mullins to a term of imprisonment of 72 months, which is within the recalculated advisory guideline range of 70-87 months, based on the sentencing criteria established at 18 U.S.C. §3553(a).

*BACKGROUND*

The Court has vacated the sentence it imposed on Mr. Mullins in case number 09-03012-01-CR-S-RK.[2] A *de novo* resentencing hearing is scheduled for February 26, 2018. Mr. Mullins herein submits his objection to the Resentencing Addendum to the

---

[1] Movant's criminal case was originally assigned to District Judge Gary A. Fenner with Case No. 04-03016-01-CR-1-S-GAF. On June 23, 2016, Movant's criminal case was reassigned and transferred to District Judge Roseann Ketchmark and was assigned this new Case No.

[2] Crim doc. 62, "Crim. doc." refers to the docket number entries in Movant's criminal case, Case No. 04-03016- 01-CR-S-GAF. "Doc." refers to the docket number entries in Mr. Mullins' civil case, Case No. 16-03243- CV-S-RK. Page number citations refer to the page numbers assigned by the CM/ECF system.

Presentence Report (PSR Addendum), and his sentencing memorandum in support of a Guidelines range sentence of no more than 87 months.

### *LEGAL ARGUMENT*

**I.** *Objections to the presentence report addendum*.

Mr. Mullins has had an opportunity to review the PSR Addendum with counsel. The PSR Addendum was filed prior to the parties having an opportunity to review the report and make objections, as is the practice in "*Johnson* re-sentencings" in this district. Mr. Mullins does however, make the following objections to the PSR Addendum.

Mr. Mullins objects to the use of the 2004 Guideline manual in any way. The version of the guidelines in effect at the time of resentencing applies. U.S.S.G. § 1B1.11 cmt. 8; *see also* 18 U.S.C. § 3553(a)(4)(A)(ii). The Eighth Circuit has addressed this issue and has stated that when a sentence has been vacated pursuant to a 2255 motion, as in this case, the *current* guideline manual should be used. *United States v. Tidwell,* 827 F.3d 761, fn. 2 (8th Cir. 2016); *United States v. Steward*, 2018 WL 541771, *1 (8th Cir. 2018). The only exception to that rule, of course, would be if using the current manual resulted in an *ex post facto* violation. *Id*. Mr. Mullins does not allege that any such violation would occur if the 2016 manual were used. The 2016 manual is the correct manual to be applied at the resentencing herein.

The government may attempt to rely on 18 U.S.C. § 3742(g)(1), which states that cases remanded on appeal should apply the guidelines in effect at the original sentencing. However, the Eighth Circuit has stated this statute is an exception to the general rule that

2

the guidelines in effect at the time of sentencing apply, and that §3742(g)(1) applies only to re-sentencings pursuant to appellate remand. *Tidwell*, 2016 WL 3568060, at *2 n.3.

The PSR Addendum, using the current Guidelines, found Mr. Mullins remains a criminal history category VI. Mr. Mullins agrees that the base offense level is 14, and that a 6 level enhancement is applicable pursuant to § 2K2.1(a)(2), resulting in an adjusted and total offense level of 20.

The Guidelines range of imprisonment based on an offense level of 20 and a criminal history category of VI is 70-87 months. That is the appropriate guideline range before the Court to be utilized at Mr. Mullins's resentencing hearing.

**II.  Response to anticipated Guidelines calculation argument by Government.**

In the response to Mr. Mullins' Motion to Vacate pursuant to 28 U.S.C. §2255, the Government argued that the conviction for Missouri resisting arrest listed in Mr. Mullins' original Presentence Investigation Report (PSR) ¶ 33 is a crime of violence. In anticipation of this argument by the Government, Mr. Mullins submits supplemental authorities in opposition to this objection.[3]

Mr. Mullins' prior conviction for Missouri resisting arrest, Mo.Rev.Stat. § 575.150 (1986), categorically fails to qualify as a crime of violence because it is not an enumerated offense, nor does it have as an element the use, threatened use, or attempted use of force. U.S.S.G. § 4B1.2(a)(1) and (2).

---

[3] Mr. Mullins incorporates herein the pleadings and arguments in this regard previously filed in this matter and Mr. Mullins' related civil matter. See, Doc. #11, Doc. #13, Doc. #22 and Crim. doc. #57.

3

In determining whether an offense qualifies as a "crime of violence" under the elements clause, sentencing courts must employ the categorical approach. See *Descamps v. United States*, 133 S.Ct. 2276, 2283 (2013); *United States v. Ossana*, 638 F.3d 895 (8th Cir. 2011). This approach requires that courts "look only to the statutory definitions—i.e, the elements—of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as [a "violent felony" or] a "crime of violence." *Descamps*, 133 S.Ct. at 2283. In addition, under the categorical approach, an offense can only qualify as a "crime of violence" if all of the criminal conduct covered by a statute—"including the most innocent conduct"—matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, post-*Descamps*, for an offense to qualify as a "crime of violence" under the elements clause, the offense must have as an element the use, attempted use, or threatened use of "physical force" against another person. U.S.S.G. § 4B1.2(a)(1). And "physical force" means "violent force—that is, force capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). What is often overshadowed by the violent force requirement is that it must be force used against *another person*.

As detailed below, Mr. Mullins' conviction for Missouri resisting arrest categorically fails to qualify as an ACCA or § 2K2.1 predicate offense for enhancement

4

purposes. Mr. Mullins' prior conviction listed in ¶33 for resisting arrest, Mo.Rev.Stat. § 575.150 (1986), does not meet the definition of a crime of violence. The Judgment in that prior conviction notes simply that the offense of conviction is resisting arrest, a class D felony. Exhibit A. The offense, which is indivisible, does not require as an element the use, threatened use, or attempted use of physical force *against the person of another*. It most certainly does not require the use of violent physical force against another person.

> Missouri Revised Statute § 575.150 (Cum.Supp. 1986) is as follows:
>
> 1. A person commits the crime of resisting or interfering with arrest if, knowing that a law enforcement officer is making an arrest, for the purpose of preventing the officer from effecting the arrest, stop or detention, the person:
>
> (1) Resists the arrest of himself by using or threatening the use of violence or physical force or by fleeing from such officer; or
>
> (2) Interferes with the arrest of another person by using or threatening the use of violence, physical force or physical interference.

Under Missouri law Mo.Rev.Stat. §575.150 (1986), the "resist" element can be committed by a variety of means. "Under section 575.150.1, resisting arrest is a crime if the person being arrested resists by one of five separate means: using violence, threatening to use violence, using physical force, threatening to use physical force, or by fleeing." (Emphasis added); *State v. Caldwell*, 352 S.W.3d 378, 383-384(Mo.App.W.D. 2011) (citing *State v. Belton*, 108 S.W.3d 171, 175 (Mo.App.W.D. 2003).

The court in *Belton* made it clear that violence or violent force is not necessary to commit the offense:

5

> By separately listing "violence" and "physical force," the legislature
> obviously intended for "physical force" to include nonviolent force. To
> conclude otherwise would render "physical force" mere surplusage.

108 S.W.3d at 175.

There are numerous examples in Missouri court decisions where minimal physical actions, that are not actions against another person, have been held to satisfy the means of Missouri resisting arrest. In *State v. Belton*, 108 SW3d 171 (Mo. App. 2003) the Missouri Court of Appeals sustained a conviction for resisting arrest by threatening the use of violence or physical force. Belton was arrested during a traffic stop. After having been handcuffed, Belton resumed his place in the passenger front seat of the car. The only question for the Court of Appeals was whether the defendant used "physical force" in resisting his arrest when he refused to exit the vehicle while the officer tried to pull him out. The Court found that Belton had not made any threat of violence or force against the arresting officer. "The only force that he used was to exert sufficient resistance to keep [the officer] from pulling him from the car." *Belton* at 174. The Court of Appeals found that the evidence was sufficient to sustain the conviction. In doing so, the court noted that the statute separately lists "violence" and "physical force." "[T]he legislature obviously intended for 'physical force' to include ***nonviolent force***. To conclude otherwise would render 'physical force' mere surplusage." *Belton* at 175 (emphasis added).

The holding in *Belton* also makes it clear that the physical force (including non-violent force) required by the Missouri statute does not have to be used against the person of another. The force in *Belton*, as noted above, was the physical strength the defendant

6

exerted to keep himself in the car. A similar conclusion was reached in *State v. Miller*, 172 SW3d 838 (Mo App. 2005). In that case, the defendant resisted arrest by refusing to exit her vehicle, and by grabbing the steering wheel when officers attempted to remove her from the vehicle. Miller exerted non-violent physical force against the steering wheel of her car, and yet her conviction for resisting arrest was sustained.

In *State v. Feagan*, 835 S.W.2d 448 (Mo. App. 1992) the Missouri Court of Appeals sustained a resisting arrest by threatening to use violence or physical force conviction. *Feagan* at 449. Officers arrived at Feagan's home to arrest him. They found him asleep in bed. They awoke him, placed him in handcuffs, and escorted him to the patrol car. He was driven to the police station and placed in a cell. The officers faced "difficulty" both in handcuffing Feagan and in placing him in a cell. *Id*. The following portion of the appellate opinion, which includes an excerpt of the trial transcript, details what happened:

> The officers awakened defendant and told him he was under arrest for rape. Defendant did not submit to the custody of the officers … . Instead, the following occurred.
>
> "Q. Was there any response by him, uh, verbally to your announcement that you were going to investigate him—
> A. Yes, sir. He advised that he was not going to go with us.
> Q. And, uh, what happened next?
> A. Uh, he, after his, uh, verbal disagreement advising that he was not going to go with us, we had to coerce him, and then at one point he also said that it was going to take more than

7

> the two of us, meaning Officer Bough and myself, to take him
> in.
> . . . . .
> Q. What did he do to show his uncooperation?
> A. Uh, the verbal statement as, as, uh, before. Said that he
> would not go for, for reasons that, for some reasons that he
> said, and that, uh, that he stiffened up his arms when I
> attempted to place the handcuffs on him."

*Feagan* at 449-450.

The Missouri Court of Appeals found that the evidence "was sufficient for the jury to find defendant did not submit but resisted arrest by threatening violence and using physical force in stiffening his arms and requiring the officers to coerce him." *Id.* at 450. As in *Miller*, the officers applied physical force against the defendant, and the defendant did not apply physical force *against* anyone. Nevertheless, the "physical force" of "stiffening his arms" was sufficient to sustain a conviction. In addition, the court apparently found that saying "it's going to take more than the two of you" was a sufficient threat of violence.

The Court is bound by state court interpretations of state law, including determination of the elements and what conduct or level of force satisfies a particular element. *Johnson v. United States*, 559 U.S. 133, 138 (2010) (*Johnson 2010)*. The Court must next determine whether the elements deemed sufficient under state law meet the elements of physical force as the Supreme Court has defined it. In *Johnson 2010,* the Supreme Court held that "physical force" within the meaning of the ACCA is "*violent*

8

force – that is force capable of causing physical pain or injury to another person." *Johnson* at 140; emphasis in original.

Thus, under Missouri law, resisting arrest can be accomplished by a variety of means that do not constitute force "against the person of another,"[4] let alone the violent force standard that must be met.  (*Johnson v. United States*, 559 U.S. 133, 130 S.Ct. 1265, 176 L.Ed.2d 1 (2010), declared that "[p]hysical force" as used in § 4B1.2(a)(1) refers to "violent force").  As the court in *Belton* held, no element of Missouri resisting arrest requires *violent* force.

In evaluating whether an offense qualifies as a predicate crime of violence under the ACCA or U.S.S.G. § 4B1.2(a)(1), the Supreme Court has consistently and adamantly insisted that the focus is on the statutory elements only.  *See Descamps*, 133 S.Ct. at 2283-85, and *Mathis v. United States*, 133 S.Ct. 2243, 2251 (2016). ("[A] sentencing judge may look only to the elements of the offense, not to the facts of the defendant's conduct. That simple point became a mantra in our subsequent ACCA decisions." (internal citations omitted)).  Thus, because the statutorily required elements of Missouri resisting arrest do not require that the government charge and prove violent force against the person of another, such cannot serve as a predicate offense for purposes of the ACCA or U.S.S.G. § 2K2.1 and § 4B1.2(a)(1).

---

[4] U.S.S.G. § 4B1.2(a)(1).

A similar Indiana statute (Ind. Code §35-44-3-3) proscribing "resisting law enforcement" was recently construed by the Court in *United States v. Bennett*, 863 F.3d 679 (7th Cir. 2017), and found to not be a violent felony pursuant to 18 U.S.C. §924(e)(2)(B)(i). Bennett had been prosecuted for "inflict[ing] bodily injury on or otherwise caus[ing] bodily injury to another person"—an offense defined in subsection (b)(1) of Ind. Code § 35–44–3–3 — in the course of committing an offense (resisting arrest). Id. at 681. That conduct, the district judge concluded, made Bennett guilty of having committed a violent felony within the meaning of ACCA. The Seventh Circuit in reversing that holding found:

> But "inflict[ing] bodily injury on or otherwise caus[ing] bodily injury to another person," as defined by the Indiana courts, need not connote violence. In *Whaley v. State*, 843 N.E.2d 1, 5, 10–11 (Ind. App. 2006), the Court of Appeals of Indiana held that a suspect who had "put his arms underneath his body to prevent the deputies from handcuffing him" had inflicted bodily injury on the deputies because the deputies had injured their hands by hitting the suspect's forearms to bring his arms behind his back to handcuff him. Suppose a person is handcuffed by a police officer, tugs in the hope of squeezing his hands through the cuffs, and accidentally causes the officer to trip and fall as a result of the tugs. The person's effort thereby to avoid arrest would be resisting law enforcement, but would not be considered violent or even threatening under 18 U.S.C. § 924(e)(2)(B)(i). The government has failed in this case to prove a violent felony.
>
> It remains to consider the bearing of the distinction emphasized in recent cases, notably *Mathis v. United States*, 136 S.Ct. 2243, 195 L.Ed.2d 604 (2016), between a statute that creates multiple offenses by listing alternative elements of a crime and one that creates a single offense that can however be committed by different means. The government argues that subsection (b)(1)(B) of Ind. Code § 35–44–3–3 creates three separate offenses. But even if that is true, the offense of which Bennett was convicted is not a violent felony.

Id. at 681-682.

10

The two cases cited by the government in its prior arguments do not take into consideration the U.S. Supreme Court's holdings in *Mathis*. *United States v. Shockley*, 816 F.3d 1058 (8th Cir. 2016), was decided prior to the *Mathis* decision. As for *United States v. Fields*, 832 F.3d 831 (8th Cir. 2016), which was briefed before the *Mathis* decision, the Eighth Circuit expressly stated "We express no view as to whether the Supreme Court's more recent decision in *Mathis v. United States*, ––– U.S. ––––, 136 S.Ct.2243, 195 L.Ed.2d 604 (2016), casts doubt on this ruling." *Id*. at 837, fn.4.

The government suggests, based on dicta in *Shockley*, that resisting arrest by threatening the use of violence or physical force falls within the force clause of 18 U.S.C. § 924(e).[5] It does not. The force clause of § 924(e) encompasses felony offenses that have as an element the use, attempted use, or threatened use of physical force against the person of another.

It is obvious from a review of the Missouri case law that resisting arrest by threatening the use of violence or physical force, which can be met by merely stiffening one's arms as police attempt to apply handcuffs, or clinging to a steering wheel to avoid removal from a car, does not meet the definition of an ACCA or U.S.S.G. § 4B1.2(a)(1) force clause offense. The Missouri statute is satisfied by the use of *nonviolent* force and/or by force that is not applied against the person of another. See, *United States v.*

---

[5] In *United States v. Shockley*, 816 F.3d 1058 (8th Cir. 2016), the circuit court noted that portions of the Missouri resisting arrest statute may be a violent felony. This was mere dicta, because the parties agreed that Shockley had been convicted of resisting arrest by flight, that it was not a violent felony, and that his case should be remanded for resentencing. No further issues as to Missouri resisting arrest were briefed in the *Shockley* case.

*Eason*, 829 F.3d 633, 640-641 (8th Cir. 2016) (*Johnson* elevated the necessary quantum of force from *de* [*minimis*] to violent; Arkansas statute's definition of threat of any bodily impact, restraint, or confinement, after *Johnson*, fell short of requiring "force capable of causing physical pain or injury to another person).

For not only purposes of this objection, but for the preservation of the issue for any potential appeal, Mr. Mullins objects to the use of his conviction for Missouri resisting arrest as an enhancement pursuant to either the ACCA or U.S.S.G. §2K2.1 and §4B1.2 as a violent felony or crime of violence.

Mr. Mullins also objects to any information contained in ¶33 that is not contained in a *Shepard* document admitted by the Court at the sentencing hearing of Mr. Mullins. *See*, *Shepard v. United States*, 544 U.S. 13 (2005).

### III.  *Suggestions in support of a sentence of no more than 72 months*.

Mr. Mullins was arrested for his offense herein on August 12, 2004. (Crim. doc. 18 at 1). He has been in state or federal custody since that date. As of the date of his resentencing, Mr. Mullins will have been in custody as to this offense more than the 120 month maximum pursuant to 18 U.S.C. §§ 922(g)(1) and 924(a)(2). (including credit by the Bureau of Prisons for "good time credit)."[6]

The driving force behind Mr. Mullins's past behavior was his drug addiction. After almost nine (9) continuous years in custody and his participation during that time in

---

[6] Mr. Mullins has been in the custody of the Bureau of Prisons since 2005 and in custody for this offense since 2004. See, (original) Presentence Investigation Report at 1.

12

mental health, addiction and other life skills counseling he is ready to lead a drug free life.  As the Court observed in *United States v. Perella*, 273 F.Supp.2d 162, 164 (D.Mass.2003), if drug addiction creates a propensity to crime, drug rehabilitation goes a long way to preventing recidivism.  Statistics suggest the recidivism rate is less for drug offenders who receive treatment while in prison or jail, and still less for those treated outside of a prison setting. Id. (citing Lisa Rosenblum, *Mandating Effective Treatment for Drug Offenders*, 53 Hastings L.J. 1217, 1220 (2002).

At Mr. Mullins's original sentencing hearing his Guidelines range was found to be 235-293 months.  Judge Dorr imposed a sentence of 240 months, which was 8.6% above the very bottom of that Guidelines range.  Because the ACCA is inapplicable, Mr. Mullins is subject to a maximum sentence of ten years under 18 U.S.C. § 924(a)(2).  Utilizing a consistent application of where it was judged Mr. Mullins fell within the Guidelines at his original sentencing would place him at resentencing 8.6% above the low end of the current and correct Guidelines range of 70-87 months.  That calculates to the reasonable sentence of 72 (rounded) months, and is the sentence that Mr. Mullins is respectfully requesting that this Court now render.

The factors of 18 U.S.C. § 3553(a) and the strictures of the parsimony provision, will be satisfied by the sentence requested herein.  A sentence 72 months in this case is sufficient but not greater than necessary to meet all the statutory goals of sentencing.

13

Respectfully submitted,

*/s/ Celeste Johns*
**CELESTE JOHNS**
Mo. Bar No. 38495

Research and Writing Attorney
Office of the Federal Public Defender
901 St. Louis Street, Suite 801
Springfield, Missouri 65806
(417) 873-9022
celeste_johns@fd.org

Attorney for Defendant

## CERTIFICATE OF SERVICE

It is CERTIFIED that the foregoing was electronically filed on this 14th day of February, 2018, and that a copy was e-mailed to all parties pursuant to the ECF system.

*/s/ Celeste Johns*
**CELESTE JOHNS**